**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

ROBERTO ESCOBEDO and MONICA MARTINEZ, individuals

Plaintiffs,

v.

EXPRESS SERVICES, INC., an Idaho business corporation, and J.R. SIMPLOT COMPANY, a foreign business corporation,

Defendants.

Case No. 2:24-cv-1493-HL

**ORDER**

**Michael H. Simon, District Judge.**

United States Magistrate Judge Andrew D. Hallman issued Findings and Recommendation in this case on May 18, 2026. Judge Hallman recommended that this Court grant both Defendant Express Services Inc.'s ("Express") Motion for Summary Judgement and Defendant J.R. Simplot Company's ("Simplot") Motion for Summary Judgement.

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party objects to a magistrate judge's findings and recommendations, "the court

shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review *de novo* magistrate judge's findings and recommendations if objection is made, "but not otherwise"). Although no review is required in the absence of objections, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Rule 72(b) of the Federal Rules of Civil Procedure recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record."

Plaintiffs Roberto Escobedo and Monica Martinez timely filed an objection, to which Defendants Express and Simplot responded. Plaintiffs lodge six objections to Judge Hallman's recommendation: (1) the magistrate judge erroneously concluded that Plaintiffs failed to establish a prima facie case of disparate treatment discrimination because Judge Hallman applied an overly constricted standard; (2) the magistrate judge improperly concluded in analyzing Plaintiffs' hostile work environment claim that the comments made by Simplot employees as alleged by Plaintiffs were not racially discriminatory; (3) the magistrate judge improperly concluded that the comments alleged by Plaintiffs did not constitute severe or pervasive comments sufficient to state a claim for hostile work environment; (4) the magistrate judge's finding that Plaintiffs could establish pretext contradicts the finding that Plaintiffs failed to

establish a prima facie case; (5) Plaintiffs' date of termination for Plaintiffs' wage claim is a disputed issue of material fact; and (6) for Plaintiffs' retaliation claim, the date that Plaintiffs' complaints were known by decisionmakers at Simplot is a disputed issue of material fact. The Court addresses each of Plaintiffs' six objections in turn, after a *de novo* review.

## DISCUSSION

### A. Plaintiffs' Disparate Treatment Claim

Regarding the disparate treatment claim, Plaintiffs object to the application of the *McDonnell Douglas* framework in the Findings & Recommendation. Plaintiffs argue that this application is "misplaced when applied to the unique circumstances of this case." ECF 54 at 2. Plaintiffs cite *Lee v. Russell County Board of Education*, 684 F.2d 769, 773 (11th Cir. 1982), as a more appropriate authority for the applicable standard. *Id*. at 3. Plaintiffs specifically point to the *Lee* court's modification to the *McDonnell Douglas* framework for application in discharge cases, which states:

> If plaintiff proves by a preponderance of the evidence that he or she is a member of a protected class, was qualified for the position held, and was discharged and replaced by a person outside of the protected class or was discharged while a person outside of the class with equal or lesser qualifications was retained, then plaintiff has established a "prima facie case" of discrimination.

*Lee*, 684 F.2d at 773.

Plaintiffs cite no Ninth Circuit case adopting this formulation. But even if the Court applies the *Lee* modification to the facts of this case, it would not cure the deficiency of Plaintiffs' prima facie case identified in the Findings and Recommendation. Under *Lee*, Plaintiffs still need to show that persons *outside their protected class* with equal or lesser qualifications were retained. The Findings and Recommendation found that Plaintiffs failed to present evidence that similarly situated *non-Hispanic persons* were treated differently than Plaintiffs.

In their objections, Plaintiffs rely on evidence showing that other individuals attending Simplot's two-and-a-half-day orientation were disruptive and not terminated. ECF 54 at 3 (pointing to excerpts in the record stating that the "entire group was disruptive"; only "about 4 or 5 out of the bunch . . . were more attentive and respectful"; one individual "arrived late, roamed during presentations, interrupted [an employee], and refused to answer questions"; and one individual "loudly challenged" an employee). Plaintiffs also state in their objections that although Plaintiffs were fired, "white persons" engaging in the same form of disruptive conduct were retained. *Id*. at 4.

Although Plaintiffs argue that "white persons" were retained while Plaintiffs were fired for the same conduct, they provide no *evidence* of the race or national origin of the persons retained. Indeed, in their objections Plaintiffs summarize the evidence supporting their claim by identifying only one alleged comparator by name (which does not provide sufficient information about race or national origin) and none of the rest by name or any specific information. Additionally, according to Plaintiffs, the group of temporary employees at orientation of about 25 people was "85 percent Hispanic [and] 15 percent white." Martinez Dep. at 43:9-14 (ECF 47-11 at 4). They assert that most of this group was disruptive, and even assuming that means equally disruptive as Plaintiffs, such evidence would support that most of the disruptive-yet-retained employees were Hispanic, based on the makeup of the group. Further, Plaintiffs and *one white employee* were discharged from Simplot after the orientation based on disruptive behavior. Decl. of Shilo Roubidoux ("Roubidoux Decl.") ¶¶ 6-7, 13 (ECF 35). For all these reasons, Plaintiffs cannot establish that "similarly situated [non-Hispanic] employees were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 691

(9th Cir. 2017). Thus, the Court adopts the Findings & Recommendation regarding Plaintiffs' disparate treatment claim.

**B. Plaintiffs' Hostile Work Environment Claim**

Plaintiffs' second objection, relating to their hostile work environment claim, is that the Findings & Recommendation did not properly analyze whether the comments alleged by Plaintiffs were racially hostile. The Court need not reach this objection, however, because the Findings and Recommendation's second finding on hostile work environment, which is the subject of Plaintiffs' next objection, is dispositive of Plaintiffs' hostile work environment claim. The Court, therefore, declines to adopt this portion of the Findings and Recommendation.

Plaintiffs' third objection, also regarding their hostile work environment claim, is that the Findings & Recommendation fails properly to analyze the pervasiveness of the racial comments in the condensed time frame and view the evidence from the perspective of a Hispanic person. "In determining if an environment is so hostile as to violate Title VII, [courts] consider whether, 'in light of all the circumstances,' the harassment is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112-13 (9th Cir. 2004) (first quoting *Nichols v. Azteca Rest. Enter.*, 256 F.3d 864, 872 (9th Cir. 2001); then quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). To determine whether conduct was sufficiently severe or pervasive, courts look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003) (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001)). "The required level of severity or seriousness varies inversely with the

pervasiveness or frequency of the conduct." *McGinest*, 360 F.3d at 1113 (quoting *Nichols*, 256 F.3d at 872).

In addition, "[a] plaintiff must show that the work environment was both subjectively and objectively hostile." *Id*. The objective prong "must be assessed from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff." *Id.* at 1115.

The record contains evidence of five comments made over the two-and-a-half-day orientation, and for purposes of this analysis the Court assumes all five were racially hostile. Five comments over this period are not an insignificant number of comments in a short period of time. Although these comments may have been frequent, viewing all the circumstances of this case in the light most favorable to Plaintiffs, the comments were not sufficiently severe or pervasive to meet the legal standard for a hostile work environment claim. The Court keeps in mind that the severity of comments varies inversely with pervasiveness, *Id*. at 1113, but even still the comments were not sufficiently severe and were more akin to offhand comments and offensive utterances. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[O]ffhand comments . . . and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." (citation and quotation marks omitted)).

The comments also were not of a level of severity significant enough to alter the conditions of Plaintiffs' employment. To alter the conditions of employment the conduct must be "abusive, humiliating, or threatening" and "pollute[ ] the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position." *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994). Although a few of the comments made at the orientation may have been somewhat humiliating, they were not threatening and they did not pollute the workplace and make it more difficult for Plaintiffs to do

their assigned work. Thus, these comments did not alter the conditions of Plaintiffs' employment. Considering all the circumstances, the comments do not rise to the level of creating a hostile work environment. The Court adopts this portion of the Findings and Recommendation, as supplemented herein.

**C. Plaintiffs' Pretext Objection**

Plaintiffs' fourth objection concerns footnote 3 on page 10 of the Findings & Recommendation, noting that Plaintiffs likely could have shown a genuine issue of fact on pretext had they met their prima facie burden. This Court declines to adopt footnote 3, because it is not necessary to the final disposition of the Findings and Recommendation or this Order. Because Plaintiffs failed to establish their prima facie case, the issue of pretext is irrelevant.

**D. Plaintiffs' Wage Claim**

Plaintiffs' fifth objection relates to their wage claim, which is asserted only against Express. Plaintiffs argue that the Findings and Recommendation focused on the wrong "employer" relationship in concluding that Plaintiffs were terminated from employment on December 5, 2022, when Plaintiffs' relationship with Express ended. Plaintiffs argue that there is a disputed issue of material fact as to whether their employment was terminated on November 30, 2022. Plaintiffs contend that this is when Simplot "uninvited" them to continue working and Express confirmed the end of this employment. Plaintiffs argue that as of this date, they were no longer employees because they were not working, getting paid, or scheduled to work.

"Termination of employment contemplates a severance of the employment relationship rather than a mere temporary cessation of work." *State ex rel. Nilsen v. Johnston*, 233 Or. 103, 108 (1962). The question of whether there was a termination is for "the trier of fact to resolve from a consideration of all of the circumstances." *Id*. at 108-09. "[W]here 'the historical facts are

undisputed, the question becomes one of law' to be resolved by the court 'because in such circumstances the question is purely one of statutory interpretation.'" *Du Ju v. Kelly Servs. Inc.*, 2011 WL 4625669, at *11 (D. Or. Sept. 28, 2011) (quoting *Wilson v. Smurfit Newspring Corp.*, 197 Or. App. 648, 654 n.4 (2005)).

The Oregon Supreme Court analyzed the employment relationship for purposes of a wage claim and focused on the definition of "employer" in Oregon Revised Statutes ("ORS") § 652.310(1): "'Employer' means any person who in this state, *directly or through an agent*, engages personal services of one or more employees . . . ." *Taylor v. Werner Enters., Inc.*, 329 Or. 461, 467 (1999) (emphasis in original) (quoting ORS § 652.310(1)).[1] Additionally, ORS § 652.360, to which the definition of 'employer' in ORS § 652.310(1) applies explicitly, also "applies to '*any statute relating to the payment of wages*.'" *Id.* (emphasis added); *see also Boggs v. Onity, Inc.*, 2022 WL 17823559, at *7 (D. Or. Nov. 28, 2022), *report and recommendation adopted*, 2022 WL 17820246 (D. Or. Dec. 20, 2022) (adopting the definition of "employee" in ORS § 652.310).

[1] *Taylor* involved a similar relationship between an entity (DMI) that "hire[d] drivers and lease[d] their services" and was responsible for workers' payroll, and another entity (Werner) that received the workers' services and supervised general work functions. *Taylor*, 329 Or. at 463, 465, 468. In *Taylor*, the plaintiff sued the entity that was responsible for overseeing job functions (Werner), not the entity that hired the plaintiff, signed the employment contract, and was responsible for payroll (DMI). *Id.* at 464. Plaintiffs, however, do not contend that Simplot is liable for Plaintiffs' wage claim, and instead argue that Simplot and Express are "joint employers" as opposed to Express serving as an agent of Simplot for purposes of recruitment and payroll, which would not immunize Simplot from a wage claim under Oregon law. *See, e.g.*, *Taylor*, 329 Or. at 470 ("The fact that Werner chose to use the services of an agent, DMI, in arranging its employment of plaintiff and other drivers does not relieve or otherwise insulate Werner from its duties and responsibilities under ORS 652.150, nor does it lead to any reasonable inference that, by assigning those tasks to another entity, Werner somehow absolved itself of the knowledge that it would be liable for payment of services that it received from plaintiff.").

Express is a temporary staffing services company that, through local franchisees, recruits and hires workers for temporary assignments with client companies. Decl. of Harvey H.H. Homsey ("Homsey Decl.") ¶ 2 (ECF 30-10). Express is responsible for recruiting and paying the workers and some human resources functions, but only when workers are staffed at a temporary placement. *See* ECR 30-11 at 1-3. Workers do not get paid simply for having a relationship with Express by which Express *might* place them in employment at some point, it is the *placement itself* that triggers the "employer" duties of payroll and human resources. Therefore, at most, Express is an "employer" when it has "engage[d] the personal services" of its "employees" *at some other company*. *See Taylor*, 329 Or. at 467. Express essentially is a hiring agent for a company, and the "employment relationship" exists primarily between the employee and the company (who is responsible for, among other things, setting wages, duties, and hours, and for supervising work), not the employee and Express. *See Nilsen*, 233 Or. at 108; *Taylor*, 329 Or. at E470. Express does not "engage" any "personal services" of its workers in between their job assignments at *other* companies, but only when Express's "employees" are working for another company.

Express notified Plaintiffs that their "assignment" with Simplot was terminated on November 30, 2022. Escobedo Dep. at 122:8-20 (ECF 30-2 at 20); Martinez Dep. at 153:9-19 (ECF 30-3 at 20). After November 30, 2022, Plaintiffs were no longer working or receiving pay—at most, they had the possibility of a *future* work placement by Express. *See* Escobedo Dep. at 122:8-20, 126:2-10 (ECF 30-2 at 20, 23); Martinez Dep. at 168:5-8 (ECF 30-3 at 23).[2] It could have taken Express days, weeks, or months to find Plaintiffs a subsequent assignment. Thus, based on the undisputed facts, Plaintiffs were terminated from employment on

[2] This possible future employment through Express was terminated on December 5, 2022.

November 30, 2022, when they no longer had a paid job. It also is undisputed that this was a termination and not a resignation. Whether Plaintiffs quit versus were terminated on December 5, 2022, from their ongoing relationship with Express and the opportunity for *future* employment is irrelevant to the requirements for pay after Plaintiffs' November 30th termination of employment.

Under Oregon's wage payment statutes, when an employer discharges an employee, "all wages earned and unpaid at the time of the discharge or termination become due and payable not later than the end of the first business day after the discharge or termination." ORS § 652.140(1). The intent of ORS § 652.140 is to ensure that discharged employees receive their wages in a timely manner and the statute is explicit about the time frame to accomplish that. The employee may be entitled to penalty wages if the employer willfully fails to make the payment by the end of the first business day after termination. ORS § 652.150. In this context, willful does not necessarily imply malice, but merely that the thing done or omitted to be done was done or omitted intentionally, *e.g.*, "when it knows what it is doing, intends to do what it is doing, and is a free agent." *Du Ju*, 2011 WL 4625669, at *12.

The evidence is disputed and unclear precisely when Plaintiffs received their final payment. At deposition they were asked about records from Express indicating that a check was issued to Plaintiffs on December 4, 2022 (a Sunday), and the only dispute was whether the payment was deposited into Plaintiff Escobedo's account on December 9, 2022. Escobedo Dep. 130:12-25-131:1-2 (ECF 30-2 at 26-27); Martinez Dep. 172:8-11 (ECF 30-3 at 25). They also stated in their Declarations that they received their final payment on December 4, 2022. Decl. of Monica Martinez ("Martinez Decl.") ¶ 8 (ECF 45); Decl. Escobedo ("Escobedo Decl.") ¶ 8 (ECF 46). But then at summary judgment new evidence from Express was included in the record,

which shows that Plaintiffs were paid through an ACH payment that was initiated on December 7, 2022, and would have been deposited by December 9, 2022. Homsey Decl. ¶ 7. Thus, there is a disputed issue of material fact as to whether Plaintiffs received their final check on December 4, 2022, or sometime between December 7, 2022, and December 9, 2022. This dispute is irrelevant, however, because even if Plaintiffs received their payment on December 4, 2022, that was more than one business day from November 30, 2022, Plaintiffs' employment termination date.

For the above reasons, the Court denies Express's motion for summary judgment on Plaintiffs' wage claim. The Court thus declines to adopt the Findings & Recommendation on this claim.

**E. Plaintiffs' Retaliation Claim**

In their sixth objection, Plaintiffs argue that when Plaintiffs' complaints became known by the decisionmakers at Simplot is a disputed issue of material fact. The only disputed issue with Plaintiffs' retaliation claim is that Plaintiffs failed to show that Simplot's "desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 360. "The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011). "In some cases, temporal proximity can by itself constitute sufficient circumstantial evidence of retaliation . . . ." *Id.* at 937. But "[e]ssential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982); *see also Aguirre v. Chula Vista Sanitary Serv. & Sani-Tainer,*

*Inc.*, 542 F.2d 779, 781 (9th Cir. 1976) ("A showing by plaintiff that he was discharged following protected activities of which the employer was aware establishes a prima facie case of retaliatory dismissal.").

Plaintiffs cite evidence that persons at Express and nondecisionmakers at Simplot knew about Plaintiffs' complaints before Plaintiffs' employment at Simplot was terminated, and Plaintiffs argue that this is sufficient circumstantial evidence that the *decisionmakers* (Smith and Roubidoux) had the requisite knowledge. The decisionmakers, however, each submitted a declaration stating that they were unaware of Plaintiffs' complaints before they decided to "uninvite" Plaintiffs. Roubidoux Decl. ¶ 14 (ECF 35); Smith Decl. ¶ 3 (ECF 33). Simplot's human resources investigator also described his process in handling Plaintiffs' complaint and who he communicated with, which did not include Smith or Roubidoux. Shaw Dep. 12:12-13:4; 20:1-26:24 (ECF 36-5 at 4-5, 8-13).

"[I]n a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected [conduct] . . . ." *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997); *see also Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) ("In order to prevail, Raad must present evidence from which a reasonable trier of fact could conclude that the school principals who refused to hire her were aware that she had engaged in protected activity."). Thus, knowledge by others in the company is insufficient without some link or basis on which to conclude that the relevant decisionmakers may have known. As Judge Hallman discussed, one such avenue is to show a policy or practice of immediately notifying those decisionmakers when complaints are filed, but Plaintiffs did not provide such evidence.

Plaintiffs also did not provide other circumstantial evidence on which to impute the relevant knowledge to Smith or Roubidoux. "A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive. To be cognizable on summary judgment, evidence must be competent." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001); *see also Hayes Oyster Co. v. DEQ*, 316 Or. App. 186, 193 (2021) ("When evaluating the evidence, uncontradicted testimony cannot be controverted on summary judgment simply by asserting that it should not be believed.").; *Pritchett v. Runyon*, 1994 WL 616164, at *2 (Nov. 4, 1994 9th Cir.) (unpub) (concluding that a plaintiff's general belief that decisionmakers knew about protected conduct and made decisions because of it, without factual support, does not create a cognizable retaliation claim, particularly when the plaintiff failed to rebut the defendant's evidence that the decisionmakers had no knowledge of the protected conduct).

Because Plaintiffs fail to show a genuine issue of material fact that Smith or Roubidoux knew about the protected conduct before making the adverse employment decision, Plaintiffs fail to show a prima facie case for retaliation. The Court adopts this portion of the Findings and Recommendation, as supplemented herein.

**F. Portions Without Objection**

Plaintiffs do not object to the entire Findings and Recommendation, including not objecting to the factual background and Judge Hallman's alternative finding that Express is not liable for conduct by third parties (Simplot employees) because Plaintiffs fail to provide sufficient evidence under the applicable standard for ratification. For these portions of the Findings and Recommendation, the Court follows the recommendation of the Advisory Committee and reviews them for clear error on the face of the record. No such error is apparent.

The Court adopts all portions of the Findings and Recommendation to which Plaintiffs did not object.

## CONCLUSION

The Court ADOPTS IN PART the Findings and Recommendation, ECF 52. The Court DECLINES TO ADOPT the Findings and Recommendation as to Plaintiffs' wage claim and footnote 3 on page 10. The Court ADOPTS the Findings and Recommendation in all other respects, as supplemented herein. The Court GRANTS IN PART Defendant Express's Motion for Summary Judgment (ECF 30). The Court GRANTS this motion as to Plaintiffs' disparate treatment and hostile work environment claims under state and federal law. The Court DENIES this motion as to Plaintiffs' wage penalty claims pursuant to ORS § 652.140. The Court GRANTS Defendant Simplot's Motion for Summary Judgment (ECF 32).

**IT IS SO ORDERED.**

DATED this 15th day of September, 2026.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge